287 So.2d 554 (1973)
Semantha V. LANDRENEAU et al., Plaintiffs-Appellees,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Appellant.
No. 4359.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1973.
Rehearing Denied January 21, 1974.
Gist, Methvin & Timble by DeWitt T. Methvin, Jr., Alexandria, for defendant-appellant.
Donald Soileau, Mamou, for plaintiffsappellees.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
Defendant United States Fidelity & Guaranty Company appeals the award to plaintiffs Semantha V. Landreneau, et al., of attorney's fees pursuant to its contractual *555 duty to defend its insured, and from the trial court's denial of USF & G's reconventional demand for additional premiums. We affirm the dismissal of the reconventional demand and reverse the award of attorney's fees.
A reconstruction of the events leading up to this litigation and the prior relationships of the parties is essential. Most of this information was derived from an analysis of the record in the consolidated cases Richard v. Landreneau Enterprises, 167 So.2d 827 (La.App. 3 Cir. 1964), 247 La. 943, 175 So.2d 277 (1965), and Richard v. United States Fidelity & Guaranty Co., 167 So.2d 840 (La.App. 3 Cir. 1964), 247 La. 943, 175 So.2d 277 (1965). These records were introduced in evidence without objection.
Adraste Landreneau, a man of varied financial interests, died on July 13, 1960. He owned two cotton gins, sold cottonseed, fertilizer and insecticides, owned a farm with fifteen tenant sharecroppers, raised cattle, operated a rice irrigation system, financed other farmers, owned an insurance agency, and owned four or five rent houses. The record does not establish that these businesses were other than sole proprietorships.
After his death, his heirs formed a corporation, Adraste Landreneau Gins, Inc. This organization owned the two cotton gins, the cottonseed, fertilizer, and insecticide sales, and the farm financing business. At the same time a partnership, Landreneau Enterprises, was formed by the heirs and widow. This partnership had as its assets the remainder of the Adraste Landreneau interests.
USF & G had provided workmen's compensation coverage for the Adraste Landreneau interests prior to his death. Coverage by USF & G was continued by his heirs until 1963.
Sam Richard, plaintiff in the cited cases, was hired shortly after Adraste Landreneau's death. His activities included work done for most of Adraste Landreneau's original businesses. Due to the reorganization of Landreneau's various business activities, Richard found himself at times working for the partnership, the corporation, and the heirs individually. In November of 1962, he suffered a heart attack on the job, and filed suit against USF & G for workmen's compensation USF & G filed a third party complaint against Adraste Landreneau Gins, Inc. denying that Richard was employed by a business covered under the policy terms. Richard then filed another suit based upon the same action, this time against Landreneau Enterprises, Adraste Landreneau Gins, Inc., and the Estate of Adraste Landreneau. The Landreneau interests retained counsel and filed a third party complaint against USF & G. These two cases were consolidated for trial. The trial court and the Supreme Court found that Richard was entitled to workmen's compensation. They further found that the express terms of the policy did not cover the activity in which Richard was engaged at the time of the injury, but reformed the policy to conform with the proven intent of the parties so that coverage would be provided.
The basis for the reformation was that the transformation of Adraste Landreneau's interests at the time of his death into separate legal entities was merely for bookkeeping purposes. The overall conduct of Landreneau's activities was continued in the same manner after his death. The intent of the parties at the time the insurance contract was entered into after Adraste's death was merely to renew the previous coverage, and that the policy had been erroneously issued with Adraste Landreneau Gins, Inc., as the named insured. The policy was reformed to cover all the Landreneau enterprises.
As a result of that litigation, the Landreneaus now seek attorney's fees which they became indebted for, allegedly due to USF & G's breach of its contractual obligation to defend. USF & G took this opportunity to reconvene for additional premiums *556 which it claims as a result of the reformation of the policy. The trial judge did not assign reasons but granted the attorney's fees incurred by the Landreneaus in the previous suit and rejected USF & G's reconventional demand.
The testimony of Landreneau's attorney and his bill of $1,748.98 were the only items of evidence introduced relevant to the principal demand in this case. The attorney testified that he represented the Landreneaus in all matters in the suit, having defended on the merits and having urged coverage under the policy. He could not state that he spent more time and work on the merits or on the coverage issue. Nowhere in his testimony or in other portions of the record does it appear that USF & G failed to defend on the merits.
We find that the Landreneaus failed to prove its entitlement to attorney's fees. They failed to prove that USF & G did not defend on the merits in the original case. All that an insured is entitled to is an adequate defense on the merits in order that the insurer's obligation to defend be satisfied. The insured is, of course, perfectly free to retain its own counsel to assist in the defense on the merits if it so chooses. The mere fact that the insured did so does not of itself prove that the insurer failed to fulfill its contractual duty.
The record contains USF & G's answer to Richard's original petition. It denies liability on the merits. Nowhere does the record indicate that USF & G varied from this original position. The fact that it filed a reconventional demand against the Landreneaus does not constitute proof that it failed to defend on the merits. Louisiana courts have recognized that an insurer may fulfill its contractual obligation to defend by defending on the merits, and at the same time it may deny coverage. Clemmons v. Zurich General Accident and Liability Insurance Company, 230 So.2d 887 (La.App. 1 Cir. 1969); Breitenbach v. Green, 186 So.2d 712 (La.App. 4 Cir. 1966); Fontenot v. State Farm Mutual Insurance Company, 119 So.2d 588 (La.App. 1 Cir. 1960).
USF & G appeared quite justified in denying coverage at the time suit was filed. In fact, judicial reformation of the policy was required before coverage was found to exist.
Since USF & G was not proven to have failed to defend, it cannot be now held responsible for attorney's fees. USF & G cannot be compelled to pay its insured's attorney's fees because of its bona fide denial of coverage. Furthermore, it cannot be compelled to pay its insured's attorney's fees for the conduct of a defense on the merits, which defense was repetitive or supplementary.
USF & G urges that, pursuant to the reformation of the insurance contract, it is entitled to additional premiums. The Supreme Court's opinion relating to the reformation of the contract is controlling.
The evidence of record affirmatively reflects that all of the Landreneaus thought that they were renewing, and intended to renew, the workmen's compensation insurance carried by their father. Roscoe A. Bolton, Vice-President of Alex & Bolton, Inc., local agents handling the business of United States Fidelity & Guaranty Company, testified that after Adraste Landreneau died only the name of the insured was changed and that there was no change in coverage. The record also reflects that the premiums paid by Adraste Landreneau and those paid by his successors were substantially the same. Also evidenced in the record is a policy which expired on July 3, 1961 (this policy must have been issued prior to Adraste Landreneau's death on July 13, 1960), which sets forth the name of the insured as "Adraste Landreneau, d/b/a Landreneau Gin, Mamou, Louisiana." The file memo of Adraste Landreneau's insurer, supra, definitely recites that it was the intention of Adraste Landreneau to cover all of his operations, farm operations *557 as well as residence carpentry. The endorsement on the back of the instant policy, as well as the endorsement on Adraste Landreneau's policy, states that an additional premium was to be paid for farm operations, which we conclude covered residence carpentry as set forth in the insurer's file memo. Under such facts and circumstances, we are constrained to conclude that although the named insured was "Adraste Landreneau Gins, Inc., Mamou, Louisiana", the intended and real insured were Landreneau Enterprises, Adraste Landreneau Gins, Inc., and/or the Estate of Adraste Landreneau. The following statement in Maggio v. State Farm Mutual Automobile Ins. Co., La.App., 123 So.2d 901, 905, is applicable to the present matter.
"The insurer is therefore bound by the knowledge of the true intention of the parties that the insurance policy was issued for the protection also of Gill as an additional named insured. * * * For if an insurance policy within the actual intention of the parties is issued for the protection of another than the named insured, the insurer may be held to have afforded such protection by the policy, or to be estopped to deny it; and the policy may be equitably reformed to show the true intention of the parties in this regard. * * *" See, Christo v. Eagle Star Insurance Company, Ltd., 232 La. 28, 93 So.2d 682; Randazzo v. Insurance Co. of State of Pennsylvania, 196 La. 822, 200 So. 267.
Having found that the intended insured were the Landreneau interests, supra, we conclude that a mutual mistake existed between the insurer and the insured; such mistake was one of terminologydesignating the insured as only "Adraste Landreneau Gins, Inc., Mamou, Louisiana", instead of the interests, supra. There is ample authority for the reformation of insurance contracts where, by reason of mutual mistake, the policy as written does not express the actual intent of the parties. The instant policy must therefore be reformed or corrected to recite the true intention of Adraste Landreneau, now deceased, and all his successors. Maryland Casualty Company v. Kramel, La.App., 80 So.2d 897; Easley v. Boston Insurance Company, La.App., 132 So.2d 654. 175 So.2d 277 at 287-288.
USF & G contends that the reformation of the policy ordered by the Supreme Court constituted an enlargement of the coverage. The Supreme Court's finding that it was the intent of the parties that the corporation, the partnership, and the succession be covered has prompted USF & G to seek additional premiums which it alleges were not included in the original audits. Most of these alleged additional premiums were based upon salaries of partners of Landreneau Enterprises.
We reject this interpretation. From the very outset of the quoted portion of the Supreme Court's opinion, it is apparent that the policy was merely a renewal of the one in effect prior to Adraste's death. A prominent factor in arriving at that conclusion was the testimony of USF & G's local agent that there was no change in coverage after Adraste's death. All of his operations were covered prior to his death, and the Supreme Court found that this policy was merely renewed, providing identical coverage. The mutual mistake consisted of an improper designation of the insured as Adraste Landreneau Gins, Inc.
Since the Supreme Court's reformation did not expand coverage, no additional premiums are due pursuant to that reformation. We are particularly persuaded to arrive at that conclusion by the Supreme Court's finding that "The record also reflects that the premiums paid by Adraste Landreneau and those paid by his successors *558 were substantially the same." 175 So.2d 277 at 287. We therefore find that the reformation of the insurance contract was solely for the purpose of rectifying a mutual mistake in designating the insured.
Even if the policy coverage was expanded, we cannot find manifest error in the trial judge's conclusion that USF & G failed to prove its claim. USF & G's auditor testified as to the basis for the additional premiums. An impressive array of figures, ledger sheets, and assorted other accounting material was introduced to prove USF & G's demand. USF & G did not, however, introduce the original audit nor did it produce evidence to show what the original premiums covered. The original auditor had died before trial. USF & G's auditor who testified at trial had no idea as to which salaries were included in the original audit and which were not. Although the death of their original auditor caused some hardship, it was still incumbent upon USF & G to demonstrate that the original audit was incorrect, whether due to the reformation of the coverage or to some independent error. USF & G's auditor proved his experience and knowledge in the field of auditing and is eminently qualified in his field. But we fail to find manifest error in the position the trial judge must have taken, that in order to prove error in the original audit, it is necessary to first introduce some evidence of that audit. To do otherwise would allow damages on the basis of speculation.
That portion of the trial court's judgment awarding the Landreneau's attorney's fees is reversed and the claim is dismissed. That portion of the trial court's judgment rejecting USF & G's reconventional demand is affirmed. Half the court costs at trial and on appeal are to be borne by USF & G, and half by the Landreneaus.
Affirmed in part; in part reversed and rendered.